The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. 2:18-cr-00131-RAJ |
|---|---|
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| DOMINQUE E. JIMERSON, | |
| Defendant. | |

This matter comes before the Court on Defendant Dominque E. Jimerson's motion for compassionate release. Dkt. 1426. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

## I. BACKGROUND

Mr. Jimerson is a 44-year-old inmate currently detained at Federal Correctional Institution Lompoc, with a projected release date of September 9, 2022. On August 9, 2019, he signed an Amended Plea Agreement and pled guilty to Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(B), and 846, and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Dkt. 1046. On that same date, Mr. Jimerson was sentenced by this Court to 60 months of imprisonment, to be followed by four years of supervised release. Dkt. 1048. He now moves for compassionate release arguing that he presents extraordinary and compelling reasons for immediate release.

ORDER - 1

## II. DISCUSSION

### A. Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Jimerson's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Jimerson's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

> the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.     Exhaustion of Administrative Remedies

Prior to considering the merits of Mr. Jimerson's compassionate release motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). The parties agree Mr. Jimerson has satisfied this requirement. Although his request to the warden of his facility for compassionate release is not in evidence, Mr. Jimerson has submitted the warden's denial of the request dated June 23, 2020. Dkt. 1426, Ex. 3 and 6. As the statutorily required 30-day period has expired, Mr. Jimerson's motion is properly before the Court.

///

///

///

### C.     **Extraordinary and Compelling Circumstances.**

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Jimerson's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994. That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>  (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence.  Specifically,

Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

To be eligible for this Court to exercise its discretion for a reduced sentence, Mr. Jimerson bears the burden to show "extraordinary and compelling reasons" that meet the directives set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States,* C19-1522 JLR 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020); *United States v. Greenhut,* No. 2:18-CR-00048, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020.

Mr. Jimerson argues he presents extraordinary and compelling reasons for the Court to grant his motion for compassionate release, specifically that his obesity and high blood pressure place him at heightened risk of suffering complications should he contract coronavirus-19 (COVID-19), and that he is particularly vulnerable given the conditions at his facility, FCI Lompoc.

Mr. Jimerson asserts that when he was originally arrested and detained in this matter in June of 2018, his height was measured at six feet three inches and his weight at 235 pounds. Dkt. 1428 at 12. On August 4, 2020, records obtained from FCI Lompoc indicate his height was measured at six feet five inches and his weight at 298 pounds, resulting in a body mass index (BMI) calculated at 35.3, which is considered obese. Dkt. 1428 at 118.

In addition to his marked weight gain while in custody, Mr. Jimerson provides evidence of steadily rising blood pressure readings, which place him on the border between stage 1 hypertension and stage 2 hypertension. Dkt. 1428 at 12, 42, 61, 117, 121, 134.

Mr. Jimerson notes that that government has conceded a BMI above 30 constitutes an extraordinary and compelling reason warranting a reduction in sentence and

immediate release and that numerous courts have recognized obesity as a factor which heightens the risk of serious complications from COVID-19. Dkt. 1426, Ex. 4.

Further, Mr. Jimerson indicates he has suffered numerous back and neck injuries over the years and that the use of Ibuprofen has resulted in a hole in his intestine. Dkt. 1426, Ex. 6, PSR ¶ 110. In addition, he has been diagnosed with post-traumatic stress disorder (PTSD) and received treatment for this mental health condition between 2014 and 2017. PSR ¶ 112-113.

Mr. Jimerson highlights data compiled by the CDC on racial and ethnic minority groups indicating that the non-Hispanic Black population has been disproportionately affected by the pandemic, and that as an African American man, he faces additional risk due to this factor. Dkt. 1426.

Finally, Mr. Jimerson argues that the current conditions at FCI Lompoc have not improved significantly since the outbreak of the pandemic and that the failure of the facility to control the spread of the virus and Mr. Jimerson's inability to maintain the recommended social distancing leave him vulnerable to contracting the virus. Dkt. 1426, Ex. 6.

Mr. Jimerson argues that the combination of all of these factors increase the likelihood that if he were to contract COVID-19, he would likely suffer complications which could prove to be very severe or even fatal to him. Dkt. 1426.

The government argues that Mr. Jimerson has not presented an extraordinary and compelling reason for the Court to reduce his sentence. It indicates that at the time of preparation of Mr. Jimerson's presentence report he noted that he was in good health other than his neck and back pain, and the hole in his intestine due to the use of Ibuprofen to control this pain. He did not report any respiratory, cardiac, or other chronic conditions at that time. Since his arrest in 2018, he has denied suffering from diabetes, cardiovascular problems, respiratory issues, or any other serious health conditions. Dkt. 1445 at 1, 7, 66.

The government concedes that obesity is considered to be a condition that causes an increased risk of severe illness from COVID-19 by the Centers for Disease Control and Prevention (CDC) and, therefore, may be an extraordinary and compelling reason for the Court to consider his motion, but argues that based on Mr. Jimerson's criminal history and role in the instant offense the Court should decline to exercise its discretion to immediately release him. Dkt. 1426.

The government indicates Mr. Jimerson's medical records show that as of August 4, 2020, he had a BMI of 35.3. Dkt. 1445 at 118. Around the time of Mr. Jimerson's arrest, he weighed 235 pounds, *id*. at 12, but he recently weighed 298 pounds, *id*. at 117. This relatively recent weight gain has caused his BMI to rise above 30. Dkt. 1426.

The government states that before filing his motion for compassionate release, Mr. Jimerson denied suffering from high blood pressure, and that his medical records indicate that his blood pressure readings between June 2018 and the present place his blood pressure somewhere between normal and prehypertension. Further, the government points out that the CDC does not include high blood pressure in its list of factors that lead to an increased risk of severe complications from COVID-19, but rather indicates that his condition *might* lead to such a risk. Dkt. 1426.

Taking these countervailing positions on Mr. Jimerson's health, the Court concludes that it is undisputed that he is above the threshold for having a medical condition (obesity) that the CDC has identified as a COVID risk factor and generally qualifies as an extraordinary and compelling reason for the Court to consider a reduction in his sentence. The government all but concedes that Mr. Jimerson may have established an extraordinary and compelling reason that would allow the Court to exercise its discretion to shorten his sentence. Dkt. 1443, p. 10. With this record, the Court concludes that Mr. Jimerson's obesity warrants consideration to shorten his sentence.

Turning to Mr. Jimerson's hypertension issue, the Court does not find that his medical records for this condition justifies a finding that it serves as the basis for an

extraordinary and compelling reason for release for several reasons.  First, the record reflects Mr. Jimerson's own admission of not suffering from hypertension. *See* Dkt. 1443, p. 5.

Next, the Court considers the various blood pressure readings from the medical records.  These readings do demonstrate a fluctuation in his readings.  His medical records since June 2018 place his blood pressure somewhere between normal and prehypertension.

At best, the record merely indicates that on this topic the CDC has issued a tempered warning that hypertension "might" be a risk factor. Dkt. 1448, p. 4.  The CDC does not include high blood pressure in its list of factors that lead to an increased risk of severe illness from COVID.  With this record the Court concludes that Mr. Jimerson has failed to meet his burden and the evidence he has submitted is insufficient to warrant the relief requested.

Next, the Court turns to the other conditions noted by Mr. Jimerson.  Although he contends his PTSD condition puts him at greater risk for COVID-19, the CDC has not listed PTSD as a condition that puts people at an increased risk of severe illness from COVID-19,  While the Court does not dispute the expert opinions advanced by Mr. Jimerson on the general topic of PTSD, the Court gives significant consideration to the CDC's guidance on the topic of COVID-19.  The government notably points out the deficiencies in Mr. Jimerson's proffered expert opinions, *i.e.*, the opinions provide no clear guidance as to the effects of Mr. Jimerson's specific PTSD condition, or the risks he faces with this condition if he became affected with the virus.  Consequently, this condition alone or in combination with his other noted medical conditions do not warrant release.

**D. Safety of Others**

The Court next turns to whether Mr. Jimerson presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this

determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. 18 U.S.C. §3142(g). The Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Mr. Jimerson argues he does not pose a danger to the community if released immediately, given that he would be under the supervision of Probation. He concedes the instant offense was serious, but counters that his criminal history consists primarily of crimes committed between 1994 and 2003, which includes convictions for three gross misdemeanors, nine state court felonies, and two federal felonies. He states that during his current incarceration he has only received one infraction for a physical altercation, but says he was acting in self-defense. Dkt. 1428.

Supporting his argument he is not a danger, Mr. Jimerson sets forth his strong ties to the community and family support, indicating that his proposed release plans would mitigate any risk. Alternatively, he states he is willing to participate in a residential reentry facility program (RRC) for up to 180 days. He argues the community would be adequately protected through his proposed release plans and monitoring by Probation. Dkt. 1426.

The government counters that Mr. Jimerson does pose a danger to the community given his lengthy and serious criminal history and the circumstances of the instant offense which involved him dealing large quantities of drugs and possessing dangerous weapons, particularly since he had previously been convicted of and served long sentences for similar crimes. Dkt. 1443.

Even if this Court were to conclude that Mr. Jimerson's medical conditions or the combination thereof warranted a compelling and extraordinary basis for relief, his danger to the community would militate against his early release.

Mr. Jimerson was involved in the distribution of a large amount of a highly addictive and dangerous drug. As noted above, the evidence in this case clearly indicated that he was involved in the acquisition of nine ounces of cocaine, arranged for another half kilogram of cocaine, and admitted to possessing approximately 1.25 kilograms of cocaine that he intended to distribute. Dkt. 1046. The evidence further reflects that when law enforcement searched his residence, they found additional drugs, a loaded 7.62 caliber semiautomatic assault-style rifle, a loaded 5.56 caliber semiautomatic assault-style rifle, and a 9mm semiautomatic pistol.

While some of Mr. Jimerson's history is dated, his history clearly demonstrates that he has continued to sell drugs and arm himself while doing so despite having served various prison sentences. These observations support the conclusion that Mr. Jimerson may return to this same lifestyle and serve as a danger to the community if released.

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Jimerson's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considers the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a). These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner. 18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

Mr. Jimerson argues that in fashioning its original sentence the Court did not have in mind the present conditions of his confinement, where he faces a risk of exposure to COVID-19, and that the result is far greater punishment than "normal" incarceration. He urges the Court to reweigh the § 3553(a) factors and revisit the sentence imposed on him. Dkt. 1426.

The government contends the sentencing factors set forth in § 3553(a) have not changed since Mr. Jimerson was originally sentenced by this Court, highlighting the

seriousness of his offense, his history and characteristics, his danger to the community, and the Court's careful weighing of these factors in an attempt to avoid sentencing disparity in this large multi-defendant drug conspiracy case. Dkt. 1443. The Court agrees.

### III. CONCLUSION

For the foregoing reasons, Defendant Dominque E. Jimerson's motion for compassionate release is **DENIED**.

DATED this 21st day of October, 2020.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge